**Emilio CASIAS, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 5–850.**

United States District Court,
N. D. Texas,
Lubbock Division.

Oct. 19, 1971.

Joyce Hill, Lubbock, Tex., for petitioner.

Crawford C. Martin, Atty. Gen. of Tex., Robert C. Flowers, Max P. Flusche, Jr., Asst. Attys. Gen., Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

WOODWARD, District Judge.

Petitioner, Emilio Casias, is a prisoner in state custody, pursuant to judgment and sentence of the 137th Judicial District Court of Lubbock County, Texas in Cause Number 11101, styled State of Texas v. Emilio Casias. The jury found him guilty of the felony offense of robbery by assault on October 30, 1968. The punishment was determined by the jury and the defendant was sentenced to life imprisonment in the state penitentiary on December 4, 1968. The Court of Criminal Appeals affirmed the conviction on April 1, 1970, Casias v. State of Texas, 452 S.W.2d 483.

Petitioner filed this application for writ of habeas corpus under Section 2241 et seq., Title 28 U.S.C. and is proceeding in forma pauperis under Section 1915, Title 28 U.S.C. By his application Petitioner alleges (1) that his constitutional rights under the Fifth and Fourteenth Amendments were violated in that a purported confession was admitted in evidence at trial, incriminating him, and that such confession should have been excluded for the reason that it was given involuntarily due to Petitioner's lack of understanding of the nature of the contents and consequences of the statement and (2) that his rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated in that he was subjected to double jeopardy by being assessed a life term in prison after his initial conviction and sentence of forty years had been reversed and remanded for a new trial.

The pleadings and exhibits filed show that the issues raised in this application have been first presented to the Courts of the State of Texas. The precise

questions presented in this application were among the issues presented by Petitioner in his direct appeal. Petitioner has, therefore, exhausted his state remedies and the challenges raised by his application are properly before this court.

Petitioner has had two trials for the offense of robbery by assault. At each trial he was represented by appointed counsel. He initially complained that his confession was involuntary, because he had not been given the constitutional warnings of his right to counsel and right to remain silent, that the officers through the exercise of improper influence coerced him into signing the confession by promising him that if he signed the confession they would see that he received a shot of narcotics and that he was denied assistance of counsel and denied his right to an examining trial. His appointed counsel filed Motion to Suppress and the trial court, after conducting a pre-trial hearing on the motion on March 29, 1968, overruled the Motion to Suppress. The confession was admitted into evidence at the trial on April 16, 1968. The jury determined that Petitioner was guilty and assessed his punishment at confinement in the state penitentiary for forty years.

Petitioner filed Motion for New Trial for the reason that the trial court failed to grant him a pre-trial hearing on the issue of present insanity as requested. The court granted the motion and ordered a new trial on June 20, 1968.

On October 28, 1968, the trial court conducted another pre-trial hearing on motion by Petitioner to suppress evidence. At that hearing a licensed clinical psychologist, who had been appointed by the court to make a psychological evaluation of Petitioner, testified that Petitioner had an IQ of 68 based upon performance type testing, that it was not possible to use the verbal type testing, that he was retarded but knew right from wrong and knew the nature and consequences of his acts, that he was illiterate, had a limited vocabulary, was not in the opinion of the psychologist able to read, had a mental age of eight years and an educational equivalent of second grade. The testimony from the prosecution indicated that the statutory warnings had been read by the officers to Petitioner before the statement was given, but the statement was not read to Petitioner. Some of the words in the statement and in the warning, in the opinion of the psychologist, were too difficult for Petitioner to understand. The trial court again overruled the Motion to Suppress and the case went to trial on October 29, 1968.

At the trial the defense again objected to the introduction of the confession. The court retired the jury and heard evidence to determine whether the confession had been taken in accordance with law. The court filed his order, finding in the order that Petitioner had been warned of his constitutional rights by the police officers and that he made the confession knowingly, intelligently and voluntarily, and admitted the confession into evidence.

The clinical psychologist again testified—before the jury and with the jury retired—to the same effect as in the pre-trial hearing on motion to suppress. The court submitted the issue of voluntariness to the jurors requiring that before considering the confession they must find all the proper warnings were given and that Petitioner knowingly, intelligently and voluntarily waived those rights prior to and during the making of the alleged confession. The court refused to instruct the jury on the mental capability of Petitioner to understand the contents of the statement.

The jury found Petitioner guilty as charged in the indictment and sentenced him to life imprisonment in the state penitentiary.

## INVOLUNTARY CONFESSION

■ Petitioner contends that the confession was involuntary because his mentality was so low that he could not understand its contents and he could not understand the warnings allegedly given. Full and fair hearings were conducted in the trial court on this issue. The tran-

scription of the proceedings of both hearings on pre-trial motion to suppress the confession and of both trials are before this court and are part of the record in this proceeding. The court has examined these complete transcriptions and has examined the order of the state trial judge, finding the relevant facts and admitting the confession into evidence. An explicit finding on the disputed factual issues tendered to it was made by the state trial judge. None of the exceptions of Section 2254(d), Title 28 U.S.C. appear to be applicable. This court adopts the findings of fact of the state trial judge and concludes that Petitioner, notwithstanding his retarded mental capacity, understood the warnings given him, understood the nature and consequences of the confession, and knowingly, intelligently, and voluntarily made his confession. Townsend v. Sain, 372 U.S. 293, 312–313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

## DOUBLE JEOPARDY

A more complex question is presented by Petitioner's second contention. The facts are undisputed and no evidentiary hearing is required. Petitioner received a more severe sentence upon his second trial than on the first trial and the record is silent as to identifiable conduct on the part of Petitioner occurring after the time of the original sentencing proceeding that would justify an increased sentence on retrial. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The United States Court of Appeals for the Fifth Circuit has applied the *Pearce* doctrine retroactively. United States v. Wood, (5th Cir. 1969) 413 F.2d 437.

In *Pearce* the Supreme Court stated: "Whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

██ Respondent contends that the record does reflect evidence upon the second trial which warrants the imposition of a more severe penalty. During the sentencing phase of the second trial evidence was admitted of prior felony convictions. Such evidence does not meet the test of *Pearce*. It was evidence that was available to the prosecution at the time of the first trial. It does not come within the definition of events *subsequent to the first trial* that may have shown new light upon defendant's "life, health, habits, conduct, and mental and moral propensities". Supra, 395 U.S. at 723, 89 S.Ct. at 2079, citation omitted, emphasis added.

██ Since the exception expressed in *Pearce* does not apply, the applicability of the *Pearce* doctrine to jurisdictions where the jury assesses punishment is squarely presented. *Pearce* and its progeny does not discuss this issue.

██ The major purpose of the *Pearce* doctrine is to prevent an increased penalty on retrial from being the product of retaliation or vindictiveness on the part of the sentencing judge who is offended by the accused's successful efforts in securing a new trial. In jurisdictions where the jury sets the penalty this factor does not apply. Petitioner argues that the second jury had ample opportunity to know about the earlier trial, but the record does not so reflect such knowledge. And mere knowledge on the part of the individual jurors of an earlier trial is not apt to spark the degree of vindictiveness and desire for personal retaliation which *Pearce* is designed to prevent.

Petitioner is not confined in violation of the Constitution and is not entitled to the writ of habeas corpus. Accordingly the application for writ of habeas corpus is hereby denied and dismissed.

This is a final judgment.